1  Nathan Brown (State Bar No. 033482)
2  Brown Patent Law
   15100 N 78th Way, Suite 203
3  Scottsdale, AZ 85260
   Phone: 602-529-3474
4  E-mail: Nathan.Brown@BrownPatentLaw.com

5
6  *Attorney for Plaintiff, others listed below.*

7              **IN THE UNITED STATES DISTRICT COURT FOR**
8                    **THE DISTRICT OF ARIZONA**

9

10  Dan L. Boger, individually and on behalf of          Case No.
    a class of all persons and entities similarly
11  situated,

12                    Plaintiff,                          **CLASS ACTION COMPLAINT**

13
14  vs.

15                                                        **DEMAND FOR JURY TRIAL**

16  The General Automobile Insurance
    Services, Inc., and Spanish Quotes, Inc.
17
                      Defendants.
18

19

20

21

22

23

24

25

26

27

28

**Preliminary Statement**

1.    "Month after month, unwanted robocalls and texts, both telemarketing and informational, top the list of consumer complaints received by" the Federal Communications Commission ("FCC").[1]

2.    Plaintiff Dan L. Boger brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

3.    Mr. Boger alleges that The General Automobile Insurance Services, Inc. ("The General") commissioned automated telemarketing calls to him and other class members without their prior express written consent. The calls were made pursuant to an agreement between The General and Spanish Quotes, Inc. ("Spanish Quotes"), a company that The General hired to make telemarketing calls on its behalf.

4.    Mr. Boger and class members never consented to receive these calls. In fact, Mr. Boger even registered his number on the National Do Not Call Registry to avoid unwanted telemarketing calls.  The General nonetheless engaged in a nationwide telemarketing campaign designed to sell insurance to consumers.  Because this telemarketing campaign placed calls to many thousands of potential customers *en masse*, Mr. Boger brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of The General.

---

[1] *Omnibus TCPA Order*, GC Docket 02-278, FCC 15-72, 2015 WL 4387780, ¶1 (July 10, 2015).

5.    A class action is the best means of obtaining redress for the Defendants' wide-scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

### Parties

6.    Plaintiff Boger is a resident of Maryland.

7.    Defendant Spanish Quotes, Inc. is an Arizona corporation with its principal place of business in Phoenix, AZ and a registered agent of Todd Lockwood at 11425 N. 43rd St., Phoenix, AZ 85028.

8.    Defendant The General Automobile Insurance Services, Inc. is a California corporation with its principal place of business in Tennessee. The General solicits insurance business nationwide, including into this District. The General is also registered to do business in the state of Arizona, and has a registered agent of Corporation Service Company, 8825 N 23rd Avenue, Suite 100, Phoenix, AZ 85021.

### Jurisdiction & Venue

9.    The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the Plaintiff's claims arise under federal law.

10.    Venue is proper under 28 U.S.C. § 1391(b)(2) because the calls that were initiated to the Plaintiff and the putative class that are the subject of the litigation were made from this District. As such, a substantial part of the events giving rise to the claims occurred in this District. Furthermore, the Defendant resides in this District.

3

**TCPA Background**

11.    In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy." Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

12.    The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service."  *See* 47 U.S.C. § 227(b)(1)(A)(iii).

13.    The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A).  *See* 47 U.S.C. § 227(b)(3).

14.    According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

15.    The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used."  *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

16.    In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

17.    "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting Off Robocalls* (July 22, 2016), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls (statement of FCC chairman).

18.    "The FTC receives more complaints about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016), https://www.ftc.gov/system/files/documents/advocacy_documents/commentstaff-ftc-bureau-consumer-protection-federal-communications-commission-rulesregulations/160616robocallscomment.pdf.

19.    *The New York Times* reported on the skyrocketing number of robocall complaints and widespread outrage about illegal telemarketing. Tara Siegel Bernard, *Yes, It's Bad. Robocalls, and Their Scams, Are Surging*, N.Y. Times (May 6, 2018), https://www.nytimes.com/2018/05/06/your-money/robocalls-riseillegal.html; *see also* Katherine Bindley, *Why Are There So Many Robocalls? Here's What You Can Do About Them*, Wall St. J. (July 4, 2018), https://www.wsj.com/articles/why-there-are-so-manyrobocalls-heres-what-you-can-do-about-them-1530610203.

20.    Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

21.    According to online robocall tracking service "YouMail," 5.2 billion robocalls were placed in March 2019 at a rate of 168.8 million per day. www.robocallindex.com (last visited May 3, 2019). YouMail estimates that 2019 robocall totals will exceed 60 billion. *See id.*

22.    The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data (last visited May 3, 2019).

## **Factual Allegations**

23.    Plaintiff Boger is a "person" as defined by 47 U.S.C. § 153(39).

24.    Mr. Boger's telephone number, (XXX) XXX-8842, is assigned to a cellular telephone service.

6

25.    Mr. Boger registered his telephone number, (XXX) XXX-8842, on the National Do Not Call Registry over a year ago to avoid unwanted telemarketing calls.

26.    On June 21, 2019, Mr. Boger nonetheless received a telemarketing call from Spanish Quotes.

27.    This call was made with an ATDS, as that term is defined by the TCPA.

28.    The Plaintiff knew that it was made with an ATDS because right before the call connected there was a distinctive "click and pause" sound, which is associated with a predictive dialing system.

29.    The pause signifies the algorithm of the predictive dialer operating.  The predictive dialer dials thousands of numbers at once, and only transfers the call to a live agent once a human being is on the line.

30.    On information and belief, the dialing system used by Spanish Quotes also has the capacity to store telephone numbers in a database and dial them automatically with no human intervention.

31.    Loading a list of telephone numbers into the dialing system and pressing a single command does this.

32.    On information and belief, the dialing system can also produce numbers using a sequential number generator and dial them automatically.

33.    The dialing system can do this by inputting a straightforward computer command.

34.    Following that command, the dialing system will sequentially dial numbers.

7

35.    First, it would dial a number such as (555) 000-0001, then (555) 000-0002, and so on.

36.    This would be done without any human intervention or further effort.

37.    On information and belief, the dialing system used by used by Spanish Quotes is driven by software that utilizes an algorithm that determines when Spanish Quotes will make a phone call.  The dialer makes this determination automatically and without human intervention.  These characteristics too are indicative of an ATDS.

38.    The call was from 732-333-6163.

39.    Other individuals have complained about receiving calls from that number. *See e.g.* https://www.reportedcalls.com/7323336163 (August 23, 2019).

40.    In fact, the winner of the FTC Robocall Challenge, NoMoRobo, identified calls from that number as robocalls. *See* https://www.nomorobo.com/lookup/732-333-6163.

41.    The Plaintiff spoke with a "Shawn Jr." from "US Auto Care", who solicited insurance services.

42.    "US Auto Care" is not a registered business name and was not offered to the Plaintiff as a company whose goods or services were being offered.

43.    "US Auto Care" is believed to be Spanish Quotes, or an authorized calling party for Spanish Quotes.

44.    The calling party did not properly identify his company, so the Plaintiff engaged the caller to find out where he was calling from.

45.    The Plaintiff was then transferred to The General to finish his insurance offer that was started on the telemarketing call.

46.    The Plaintiff spoke with "Elise".

47.    "Elise" provided the number to reach her at (800) 436-3725 with an extension of XX58, this is a number for The General's corporate office.

48.    The Plaintiff contacted The General and asked them for the basis of the call.

49.    The General identified Spanish Quotes as the company that transferred the Plaintiff to them.

## The General's Liability for Calls Made by Spanish Quotes

50.    The General offers automotive insurance services for individuals.

51.    The General generates new business through telemarketing. However, The General relies on third parties to conduct that telemarketing, such as the co-defendant Spanish Quotes.

52.    For more than twenty years, the Federal Communication Commission has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

53.    In its January 4, 2008 ruling, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id.*

9

(specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

54.    In fact, the FCC has instructed that sellers such as The General may not avoid liability by outsourcing telemarketing to third parties, such as Spanish Quotes:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

55.    On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers."[2]

56.    The May 2013 FCC Ruling held that, even absent evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for

---

[2]    *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd 6574, 6574 (¶ 1) (2013) ("May 2013 FCC Ruling").

telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls.  28 FCC Rcd at 6586 (¶ 34).

57.    The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

FCC Rcd at 6592 (¶ 46).

58.    Finally, courts have held that sellers can be held vicariously liable under a ratification theory when they accept the benefit of a telemarketer's calls.  *See, e.g.*, *Smith v. State Farm Mut. Auto. Ins. Co*., 30 F. Supp. 3d 765, 779 (N.D. Ill. 2014).  "A principal can ratify an act by (a) manifesting assent that the act shall affect the person's legal relationships, or (b) conduct that justifies a reasonable assumption that the person so consents."  *Id*. quoting Restatement (Third) of Agency § 4.01(1) (2006).

59.    The General is liable because it actively participated in the calls, as outlined above.

11

60.     The General is also liable because it knew, or should have known, that Spanish Quotes engages in telemarketing conduct in violation of the TCPA. *See e.g. Johansen v. Spanish Quotes, Inc., et. al.*, Civil Action No. 15-cv-12920 (D. MA.).

61.     The General is vicariously liable for the calls made by Spanish Quotes to Plaintiff and proposed Class members because Spanish Quotes placed the calls at issue in this Complaint on behalf of The General.

62.     On information and belief, Spanish Quotes and The General have a contract under which The General pays Spanish Quotes to place autodialed telemarketing calls to consumers on its behalf and then transfer those calls to The General representatives.

63.     Under the contract, The General controls the manner and timing under which these telemarketing calls are placed.

64.     The General further specifies certain criteria in respect to the type of consumer it directs Spanish Quotes to call and transfer to its representatives for purposes of selling insurance.

65.     The General benefitted from the calls placed by Spanish Quotes because it provided The General with additional business prospects.

66.     What's more, in its May 2013 FCC Ruling, the FCC made clear that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46). Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer

would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

## Class Action Allegations

67.     As authorized by Rule 23(b)(2) or (b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of a class of all other persons or entities similarly situated throughout the United States.

68.     The class of persons Plaintiff proposes to represent are tentatively defined as:

Spanish Quotes Call Class

All persons within the United States to whom: (a) Spanish Quotes and/or a third party acting on their behalf, made one or more non-emergency telephone calls; (b) to their cellular telephone number; (c) using an automatic telephone dialing system or an artificial or prerecorded voice; and (d) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

The General Transfer Sub-Class

All persons within the United States to whom: (a) Spanish Quotes and/or a third party acting on their behalf, made one or more non-emergency telephone calls; (b) to their cellular telephone number; (c) using an automatic telephone dialing system or an artificial or prerecorded voice; (d) that was transferred to The General and (e) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

The General Call Class

All persons within the United States to whom: (a) The General and/or a third party acting on their behalf, made one or more non-emergency telephone calls; (b) to their cellular telephone number; (c) using an automatic telephone dialing system or an artificial or prerecorded voice; and (d) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

13

Excluded from the class are the Defendants, and any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned and any member of such judge's staff and immediate family.

69.    The class as defined above is identifiable through phone records and phone number databases.

70.    The potential class members number at least in the thousands, since automated telemarketing campaigns make calls to hundreds or thousands of individuals a day. Individual joinder of these persons is impracticable.

71.    Plaintiff is a member of the proposed class.

72.    There are questions of law and fact common to Plaintiff and to the proposed class, including but not limited to the following:

    a.    Whether Defendants violated the TCPA by using automated telemarketing to call cellular telephones;

    b.    Whether Defendants placed calls using an automatic telephone dialing system;

    c.    Whether Defendants placed calls without obtaining the recipients' prior consent for the call;

    d.    Whether the Plaintiff and the class members are entitled to statutory damages because of Defendants' actions.

73.     Plaintiff's claims are typical of the claims of class members. Plaintiff's claims, like the claims of the Class arise out of the same common course of conduct by the Defendant and are based on the same legal and remedial theories.

74.     Plaintiff is an adequate representative of the classes because his interests do not conflict with the interests of the classes, he will fairly and adequately protect the interests of the class, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

75.     Common questions of law and fact predominate over questions affecting only individual class members. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or its agents.

76.     Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated.  Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities.  There will be no significant difficulty in the management of this case as a class action.

77.     The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

### First Cause of Action

**Violation of the TCPA, 47 U.S.C. § 227(b) and 47 C.F.R. § 64.1200(a)**

78.    Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

79.    The Defendants violated the TCPA by (a) initiating a telephone call using an automated dialing system or prerecorded voice to Plaintiff's telephone numbers assigned to a cellular telephone service, or (b) by the fact that others caused the initiation of those calls on its behalf.  *See* 47 C.F.R. 64.1200(a)(1)(iii); 47 U.S.C. § 227(b)(1).

80.    The Plaintiff and the putative class are entitled to injunctive relief under the TCPA and do seek that in the form of prohibiting the Defendant from using an automatic telephone dialing system in the future, absent an emergency.

81.    The Defendants' violations were negligent, willful, or knowing.

## Prayer for Relief

For himself and all class members, Plaintiff requests the following relief:

1.    That Defendants be prohibited from using an automatic telephone dialing system in the future, absent an emergency.

2.    That Defendants, their agents, and anyone acting on their behalf, be immediately restrained from altering, deleting, or destroying any documents or records that could be used to identify class members.

3.    That the Court certify the proposed class under Rule 23 of the Federal Rules of Civil Procedure.

4.    That the Plaintiff and all class members be awarded statutory damages of $500 for each negligent violation of the TCPA, and $1,500 for each knowing violation, and all other relief that is joint and equitable.

1
2
3
4

      82.    The Plaintiff this Court to order the Defendants, and their employees, agents and independent contractors, to immediately cease engaging in unsolicited telemarketing in violation of the TCPA.

5
6
7
8

    **Plaintiff requests a jury trial as to all claims of the complaint so triable.**

9
Dated:  September 4, 2019                              Respectfully Submitted,

10
                                                          */s/ Nathan Brown*

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Anthony Paronich
Email: anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone: (508) 221-1510