**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dan L. Boger, | No. CV-19-05094-PHX-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| General Automobile Insurance Services Incorporated, et al., | |
| Defendants. | |

Pending before the Court is Defendant The General Automobile Insurance Services Incorporated ("The General")'s Motion to Dismiss The General Automobile Insurance Services, Inc. for Lack of Personal Jurisdiction (Doc. 18). The Motion is granted.[1]

## BACKGROUND

The facts as alleged in the complaint are as follows. Plaintiff Dan Boger ("Plaintiff"), a resident of Maryland, alleges that on June 21, 2019, he received a telemarketing call on his cell phone from Defendant Spanish Quotes, Inc. ("Spanish Quotes"), an Arizona corporation with its principal place of business in Phoenix, AZ. Plaintiff alleges that the call was placed using an automatic telephone dialing system to Plaintiff's cell phone number, which is registered on the National Do Not Call Registry, and that Plaintiff spoke with a "Shawn Jr." from "US Auto Care," who solicited insurance

---

[1] The General has requested oral argument. That request is denied because the parties have had an adequate opportunity to discuss the law and evidence and oral argument will not aid the Court's decision. *See Lake at Las Vegas Investors Group, Inc. v. Pac. Malibu Dev.*, 933 F.2d 724, 729 (9th Cir. 1991).

services. Plaintiff further alleges that the call was eventually transferred to "Elise" at The General, a California corporation with its principal place of business in Tennessee, who provided Plaintiff with a call back number matching The General's corporate office. Based on this phone call, Plaintiff filed a class action complaint (Doc. 1) on September 5, 2019, alleging that The General and Spanish Quotes had entered into an agreement to direct automated telemarketing calls to him and other class members without their prior express written consent in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. This motion followed.

## DISCUSSION

### I. Legal Standard

A federal court sitting in diversity "applies the personal jurisdiction rules of the forum state provided the exercise of jurisdiction comports with due process." *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986). The Arizona long arm statute is co-extensive with the limits of federal due process. *See Doe v. Am. Nat'l Red Cross*, 112 F.3d 1048, 1050 (9th Cir. 1997) (citing *Batton v. Tenn. Farmers Mut. Ins. Co.*, 153 Ariz. 268, 270, 736 P.2d 2, 4 (1987)); *see also* Ariz. R. Civ. P. 4.2(a). "Due process requires that nonresident defendants have certain minimum contacts with the forum state, so that the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice." *Doe*, 112 F.3d at 1050 (citing *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)).

There are two types of personal jurisdiction—general and specific. *See Daimler AG v. Bauman*, 571 U.S 117, 126–27 (2014). Plaintiff does not argue that The General is subject to general personal jurisdiction in Arizona; thus, only specific personal jurisdiction need be considered. Courts can exercise specific personal jurisdiction when: (1) the defendant purposefully directed its activities or consummated some transaction with the forum or a resident of the forum, or performed some act by which it purposefully availed itself of the privileges of conducting activities in the forum; (2) the claim arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction is

reasonable. *Harris Rutsky & Co. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003). On a motion to dismiss for lack of personal jurisdiction brought pursuant to Fed. R. Civ. P. 12(b)(2), the plaintiff bears the burden of demonstrating that the court's exercise of jurisdiction is proper. *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011). However, where, as here, the district court decides a motion to dismiss for lack of personal jurisdiction without an evidentiary hearing, the plaintiff need only make a prima facie showing of the jurisdictional facts. Uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008).

**II. Analysis**

In determining whether a defendant purposefully established minimum contacts within a forum in the context of a contractual relationship, courts consider "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 482 (1985). A "contract with an out-of-state party alone can[not] . . . establish sufficient minimum contacts in the other party's home forum"; however, if the contract demonstrates that a defendant contemplated a long-term interdependent relationship in the forum state, the defendant cannot argue that its relationship to that state is "random," "fortuitous," or "attenuated." *Id.* at 479. For example, in *Burger King*, Burger King, a Florida corporation, brought an action in Florida federal district court when Rudzewicz, a Burger King franchise owner, refused a termination order and continued to operate a Burger King restaurant in Michigan. *Id.* at 482. The court found that although Rudzewicz did not maintain offices in or ever visit Florida, the franchise dispute grew directly out of "a contract which had a substantial connection with [Florida]" because Rudzewicz deliberately "reach[ed] out beyond" Michigan and "entered into a carefully structured 20-year relationship that envisioned continuing and wide-reaching contacts with Burger King in Florida."[2] *Id.* at

---

[2] The 20-year contract required franchisees to pay monthly royalties, advertising and sales promotion fees, and rent. Franchisees also agreed to submit to Burger King's exacting

479–480. Consequently, the court held that the Florida district court's exercise of jurisdiction did not offend due process.

Here, The General's contract with Spanish Quotes "mandates the application of the law and courts of Tennessee, not Arizona," (Doc. 25 at 5n2), and The General "did not enter into any agreements with [Spanish Quotes] in Arizona," (Doc. 18-1 at 2). Plaintiff has not alleged any facts in his Complaint or in his Opposition to suggest that The General's "prior negotiations," "contemplated future consequences," "terms of the contract," or "actual course of dealing" with Spanish Quotes might establish minimum contacts with Arizona. *Burger King*, 471 U.S. at 479.

In *Calder v. Jones*, 465 U. S. 783 (1984), a California actress brought a libel suit in California state court against a reporter and an editor who worked for the National Enquirer at its headquarters in Florida. The plaintiff's libel claims were "based on an article written and edited by the defendants in Florida for publication in the National Enquirer, a national weekly newspaper with a California circulation of roughly 600,000." *Walden v. Fiore*, 571 U.S. 277, 286 (2014). The Supreme Court found the forum contacts in that case to be "ample" because,

> The defendants relied on phone calls to "California sources" for the information in their article; they wrote the story about the plaintiff's activities in California; they caused reputational injury in California by writing an allegedly libelous article that was widely circulated in the State; and the "brunt" of that injury was suffered by the plaintiff in that State. . . . However scandalous a newspaper article might be, it can lead to a loss of reputation only if communicated to (and read and understood by) third persons. . . . Accordingly, the reputational injury caused by the defendants' story would not have occurred but for the fact that the defendants wrote an article for publication in California that was read by a large number of California citizens. Indeed, because publication to third persons is a necessary element of libel . . . the defendants' intentional tort actually occurred in California.... In this way, the "effects" caused by the defendants' article—i.e., the injury to the plaintiff's reputation in the estimation of the California public—connected the defendants' conduct to California, not just to a plaintiff who lived there. That connection, combined with the various facts that gave the article a California focus, sufficed to authorize the California court's exercise of jurisdiction.

---

regulation of every conceivable aspect of their operations. The documents also emphasized that Burger King's operations are conducted and supervised from the Miami headquarters, that all relevant notices and payments must be sent there, and that the agreements were made in and enforced from Miami.

*Id.* at 286-88. Unlike in *Calder*, the injury The General allegedly caused did not occur in Arizona; nor were events that occurred in Arizona a but-for cause of Plaintiff's injury. The effects of The General's actions as alleged in Plaintiff's complaint do not connect The General to Arizona beyond the fact of Spanish Quotes' presence in Arizona.[3]

Plaintiff has not met his burden of demonstrating that this Court's exercise of jurisdiction is proper. The Court therefore grants The General's Motion to Dismiss.[4]

## CONCLUSION

Defendant has not met his burden of demonstrating sufficient minimum contacts between Defendant The General and this forum.

**IT IS THEREFORE ORDERED** that The General's Motion to Dismiss The General Automobile Insurance Services, Inc. for Lack of Personal Jurisdiction (Doc. 18) is **GRANTED.** Plaintiff's claims as to The General Automobile Insurance Services, Inc. are dismissed without prejudice.

Dated this 3rd day of January, 2020.

G. Murray Snow
Chief United States District Judge

---

[3] In his Response, Plaintiff asserts that he "bases specific personal jurisdiction on The General's purposeful acts in contracting with SQI, an Arizona corporation, to send illegal calls" and that his "claims arise directly from this relationship, nor [sic] from the purported locus of where the call was physically dialed." (Doc. 23 at 2.) Accordingly, the Court does not consider the location of the call in establishing personal jurisdiction.

[4] Plaintiff also requests jurisdictional discovery. That request is denied. *See Boschetto*, 539 F.3d at 1020 (finding that because neither plaintiff's complaint nor his affidavit alleged jurisdictionally relevant actions by defendants, the district court's denial of plaintiff's request for discovery, "which was based on little more than a hunch that it might yield jurisdictionally relevant facts," was not an abuse of discretion).